# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Search of )
Textile Field USA LLC, 834 )
Huffman Street, Greensboro, ) Case No. 1:20 MJ 311
NC 27405 )
)
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Textile Field USA LLC, located at 834 Huffman Street, Greensboro, NC 27405 as further described in Attachment A

located in the **Middle** District of **North Carolina**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 7 U.S.C. § 136*l*(b)(1)(A), 18 U.S.C. §§ 1343 and 1017 | FIFRA, wire fraud, government seals wrongfully used and instruments wrongfully sealed |

The application is based on these facts:
See the attached affidavit of EPA-CID Special Agent William Oros

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ William Oros

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

*Applicant's signature*

William Oros, Special Agent, EPA-CID

*Printed name and title*

Date: October 26, 2020

*Judge's signature*

City and state: Winston-Salem, NC

Joi Elizabeth Peake, United States Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, William Oros, Special Agent with the Charlotte Resident Office of the United States Environmental Protection Agency, Criminal Investigation Division, being duly sworn and deposed, state as follows:

### BACKGROUND/INTRODUCTION

1. I am a Special Agent with the United States Environmental Protection Agency ("EPA"), Criminal Investigation Division ("CID"). I have been so employed since approximately August 2008. As part of my EPA-CID training, I attended the Federal Law Enforcement Training Center in Glynco, Georgia and completed the twelve-week Basic Criminal Investigator Training Program. I have also completed the nine-week EPA-CID Environmental Investigator Basic Training Program. I have received training in investigating violations of the Federal environmental and Title 18 laws and have investigated numerous pollution-related offenses and permit violations. I have a Bachelor of Science degree with a concentration in biology and a minor in chemistry. From February 1998 until August 2008, I was employed as an Environmental Analyst by the State of Connecticut Department of Environmental Protection ("CT DEP"). As an Environmental Analyst, I received training with respect to, and participated in, the investigation of violations of environmental laws and regulations. I attended numerous training courses on techniques for investigating environmental crimes and participated in the execution of multiple Federal search warrants.

2. As part of my duties as an EPA-CID Special Agent, I investigate criminal violations of environmental laws, including the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) 7 U.S.C. § 136 *et seq.*, as well as violations of Title 18 of the United States Code. I am duly authorized by Title 18, United States Code, Section 3063, to carry firearms, to execute

1

and serve any warrant or other process issued under the authority of the United States, and to make arrests without warrants for any offense committed in my presence or for any felony offense that I have probable cause to believe the person to be arrested has committed or is committing.

3. This Affidavit is made in support of an application for a warrant to search the premises of Textile Field USA LLC, located at 834 Huffman Street, in Greensboro, NC, as further described in Attachment A (hereinafter, "Subject Premises"), for evidence and instrumentalities of criminal violations of 7 U.S.C. § 136*l*(b)(1)(A) and (B) (FIFRA), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C § 1017 (government seals wrongfully used and instruments wrongfully sealed), as further described in Attachment B.

4. The statements made in this Affidavit are based on my personal knowledge; my training, education and experience; information that I have received from regulatory personnel, and witnesses. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence and instrumentalities of criminal violations of 7 U.S.C. § 136*l*(b)(1)(A) and (B) (FIFRA), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C § 1017 government seals wrongfully used and instruments wrongfully sealed,, will be located at the Subject Premises.

**STATUTORY AND REGULATORY BACKGROUND:**

**The Federal Insecticide, Fungicide and Rodenticide Act (FIFRA)**

5. FIFRA regulates the production, sale, distribution and use of pesticides in the United States. A "pesticide" is any substance or mixture of substances intended for preventing,

destroying, repelling, or mitigating any pest. 7 U.S.C. § 136(u); 40 C.F.R. § 152.3. The term "pest" is broadly defined to include, among other things, viruses, bacteria, or other microorganisms. 7 U.S.C. § 136(t) defines a pesticide product as a pesticide in a particular form (including composition, packaging, and labeling) which the pesticide is, or intended to be, distributed or sold. The term includes any physical apparatus used to deliver or apply the pesticide if distributed or sold with the pesticide.

6. FIFRA requires all pesticides to be registered with the EPA before they can be sold or distributed. 7 U.S.C. § 136a(a). Applicants are required to submit a substantial amount of information to the EPA in support of a request for registration. Items of information that must be submitted in support of an application to register a pesticide include, but are not limited to, the complete formula of each pesticide for which registration is sought, including the identity of its active and inert ingredients; all proposed labeling for the pesticide; and a statement of all pesticidal claims to be made for the pesticide. *See* 7 U.S.C. § 136a(c).

7. Registered pesticides are given a product registration number beginning with the phrase "EPA Registration No.," or the phrase "EPA Reg. No." 40 C.F.R. § 156.10(e). Pesticide-producing establishments also receive an establishment-registration number designated by the phrase "EPA Est." that appears in any suitable location on the label or immediate container. 40 C.F.R. § 156.10(f). All registered pesticides must have a label that bears both the product registration and establishment numbers. 40 C.F.R. § 156.10(a). This label also must contain several other pieces of information, such as the directions for use of the pesticide (40 C.F.R. § 156.10(a)(viii); child hazard warnings (40 C.F.R. § 156.66); a first aid statement (40 C.F.R. § 156.68); precautionary statements for humans and domestic animals (40 C.F.R. § 156.70); and environmental hazard and precautionary statements (40 C.F.R. §§ 156.80 and 156.85)). Draft

3

labeling must be submitted to the EPA along with the application for registration. 40 C.F.R. § 152.50(e).

8. It is unlawful for any person in any state to distribute or sell to any other person a pesticide that has not been registered under Section 136a of FIFRA. 7 U.S.C. § 136j(a)(1)(A). FIFRA defines "distribute or sell" to include not only actual sale or distribution of a pesticide, but also the act of offering a pesticide for sale. 7 U.S.C. § 136(gg); 40 C.F.R. § 152.3.

9. It is also unlawful for any person to sell or distribute to any other person a pesticide that is "misbranded." 7 U.S.C. § 136j(a)(1)(E). A pesticide is "misbranded" under FIFRA if, *inter alia*, its container does not have a label bearing the pesticide's registration number; or one with labeling that bears any statement, design or graphic representation relative to the pesticide or its ingredients, which is false or misleading. 7 U.S.C. § 136(q)(1) (A) & (D).

### Government Seals Wrongfully Used and Instruments Wrongfully Sealed

10. Title 18, United States Code, Section 1017 provides that "[w]hoever fraudulently or wrongfully affixes or impresses the seal of any department or agency of the United States, to or upon any certificate, instrument, commission, document, or paper or with knowledge of its fraudulent character, with wrongful or fraudulent intent, uses, buys, procures, sells, or transfers to another any such certificate, instrument, commission, document, or paper, to which or upon which said seal has been so fraudulently affixed or impressed, shall be fined under this title or imprisoned not more than five years, or both."

### USE OF ELECTRONIC DEVICES IN CRIMES

11. As described below and in Attachment B, this application seeks permission to seize records that might be found on the Subject Premises, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other

storage media, including cellular telephone(s). Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

12. *Probable cause.* I submit that if a computer, cellular telephone, or storage medium is found on the Subject Premises, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

 a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

 b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

 c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has

5

used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

13. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with any lawful warrant to search later obtained. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for seizure of forensic electronic evidence, it is

6

exceedingly likely that it will later be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in a later-obtained warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the PREMISES. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under a search warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

14. Accordingly, if imaging proves impractical, or even impossible for technical reasons, then the agents will seize those components of Textile Field USA LLC's computer system that the agents believe must be seized to permit the agents to locate the things described in the warrant at an off-site location. The seized components will be removed from the Subject Premises and returned within two business days. If additional time is needed for imaging, agents may request additional time from the Court.

7

Case 1:20-mj-00311-JEP   Document 1   Filed 10/26/20   Page 8 of 17

15. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media present in the Subject Premises. Any later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by a search warrant.

## FACTS IN SUPPORT OF PROBABLE CAUSE

16. On June 11, 2020, I received information from the complainant via the EPA tip line that Kets Fabrics ("Kets"), a fabric manufacturer located in Turkey, was manufacturing and offering for sale fabrics coated with an antimicrobial/antiviral chemical advertised as effective in killing 99.9% of viruses, bacteria, and fungi. Kets's sales literature includes a statement that the EPA is one of several regulatory agencies verifying the product is effective in killing viruses. In June 2020, the lead was referred to EPA CID in Region 2 because the solicitation was received by a customer of the complainant, a fabric distributor located in New York, New York. On September 9, 2020, I received information that the solicitation email for the Kets product originated from the offices of Textile Field USA LLC, located at 834 Huffman Street, Greensboro, NC.[1]

17. The complainant notified me that:

    a. Kets is a manufacturing competitor and fabric suppler for the complainant's company. The complainant became aware of Kets's Biosafe product when a fabric distributor, located in New York, New York, notified the complainant that Kets had sent a laboratory report and

---

[1] Based on the facts known to me through this investigation, Textile Field USA LLC acts as a distributor and marketer for Kets's products in the United States.

advertisement for the Kets Biosafe product and that the distributor was unable to verify the laboratory data.

    b. The laboratory report was traced back to Interface Microbiology Services (the "laboratory"). After contacting the laboratory, the complainant determined that the laboratory report was fictitious.

    c. The complainant stated there is a significant pressure within the fabric manufacturing industry to come up with a product that is resistant to coronavirus. He checked EPA databases and could not find the Kets Biosafe product or the EPA registration number listed by Kets for the active ingredient used to finish the Kets Biosafe fabric.

    d. There are approximately thirty fabric distributors with whom the complainant's company works. The complainant said that it is very likely they all received the same solicitation.

18. The laboratory notified me that:

    a. The complainant provided the laboratory with the report on the laboratory's letterhead stating that a Kets product was effective in killing corona virus.

    b. The laboratory said that the report was false, and that the laboratory had not provided any services to Kets. Additionally, the laboratory noted that the names of laboratory employees identified on the report were fictitious and the telephone number for the laboratory listed on the report was altered by one number, also making it fictitious.

    c. The laboratory does testing for bacterial and microbiological resistance on

9

fabrics, so they are very aware of EPA guidelines on FIFRA compliance; however, the laboratory does not do the type of testing identified in the Kets laboratory report.

19. The New York, New York distributor notified me that:

    a. A technical service employee received a data package regarding the Kets Biosafe product, including a laboratory report. The employee could not verify the laboratory report. The distributor was subsequently notified by the complainant that the laboratory report was fictitious.

    b. They attempted to contact a Kets sales representative but did not receive a response.

    c. They were looking to launch the Kets Biosafe product in August 2020 but would not proceed, given the information about the false laboratory report.

    d. Kets's products are typically brought in through the Port of New York but Kets also has a warehouse in Greensboro, North Carolina.[2]

    e. The employee of the New York, New York distributor received the Kets Biosafe data packet and laboratory report via email as follows:

From: matthew@textilefield.com" <matthew@textilefield.com>
Date: Monday, June 8, 2020 at 10:42 AM
Subject: BioSafe Technology by KETS

Hi Susan,

We are happy to share the following information about KETS new BioSafe Technology. This is a antiviral/antimicrobial treatment that remains effective after washing. Please review the attached information and let us know if you have any questions we can help you with.

---

[2] I am unaware, based on the investigation thus far, as to whether Kets has additional warehouses located in the United States.

10

Take Care,
Matthew Cohen

Textile Field USA, LLC
Healthcare Division
834 Huffman Street
Greensboro, NC 27405
matthew@textilefield.com
336-255-2111

  f. One attached document to the email was the fictitious laboratory report that in summary stated the active ingredient is Si-Quat and that:

> All the samples treated (unwashed and treated 30X washed demonstrated at least one log reduction of the *feline Coronavirus* challenge under these test conditions. All technical content (both written and/or photography) provided in this report is for information purposes only. This technical content shall not be used in promotional literature without the express written consent and legal/technical review by Interface, Inc. Viruses cited in this report were utilized for the purposes of representing general classes of Viruses. Data citing inhibition of these microorganisms in this report are not intended to convey health benefits.

  g. The second attachment to the email was the Kets Biosafe advertisement which included the following statements:

> 99.9% effective against viruses and bacteria fungi;
> It is a long-lasting anti-viral coating that provides an ongoing disinfection on fabrics surfaces;
> WHO SAYS IT WORKS AGAINST VIRUSES?
> The chemicals used in BIOSAFE approved by;
> -World Health Organization (WHO)
> -European Chemical Agency (BPR/ECHA)
> -USA Environmental Protection Agency (EPA)

This statement also included the EPA logo.

20.   Si-Quat, the active ingredient identified in the fictitious laboratory report, is manufactured in Europe by AFFIX Labs. The Si-Quat website states in part:

  a. "Affix Labs is proud to announce that Si-Quat anti-viral clear coat is now

11

proven effective against the pathogen Sars-Cov-2, the virus that causes Covid-19"; and

b. "Si-Quat by AFFIX Labs has been tested with Sars-Cov-2 the virus that causes COVID-19. The Study has been conducted based on ISO 21702 standards by the university of Lisbon."

No claims are made by AFFIX Labs that any regulatory agency listed in paragraph 18(g) has reviewed, approved or certified the product, or that the product is registered with the EPA as an antimicrobial/antiviral.

21. EPA Region 4 FIFRA Enforcement notified me that, based on a review of EPA databases, Kets and Textile Field USA are not registered with EPA to sell a pesticide. Si-Quat, the pesticide, is not approved or registered with EPA for sale or importations. Additionally, Si-Quat is also not registered as an active ingredient in any other approved antimicrobial/antiviral.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a warrant to search the Subject Premises described in Attachment A, and seize any and all portable computers, cellular telephones, and electronic devices, as well as any physical items constituting evidence of violations of the federal criminal law, as described in Attachment B.

Respectfully submitted,

/S/ William Oros
William Oros
Special Agent
U.S. Environmental Protection Agency
Criminal Investigations Division

1:20MJ311

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____    10/26/2020
Joi Elizabeth Peake
United States Magistrate Judge
Middle District of North Carolina

## ATTACHMENT A:
## Property to be Searched

<u>Textile Field USA LLC, 834 Huffman Street, Greensboro (Guilford County), NC</u>

834 Huffman Street, Greensboro, North Carolina, is located on the east side of Huffman Street. The facility is a single-story white brick industrial building with a black metal roof and Textile Field signage and the number 834 on the front of the building which faces Huffman Street. The building also has a loading dock with two white rollup bay doors and three black entrance doors. There is additional Textile Field signage adjacent to an entrance door at the top of a flight of stairs leading up to the loading dock and allowing access to all doors described. There is a small parking lot in front of the building.

Below are photographs of the site:



# ATTACHMENT B:
## Items to be Seized

This Affidavit is made in support of this Application to seize the following items:

1. Any and all physical documents relating to violations of Title 7, United States Code, 136*l*(b)(1)(A) (FIFRA); Title 18, United States Code, Section 1343 (wire fraud); and Title 18, United States Code, Section 1017 (government seals wrongfully used and instruments wrongfully sealed), involving Kets Fabrics, Textile Field USA, LLC, and/or Matthew Cohen in the form of the following:

    a. Communications and other information regarding importation, sale, offering for sale, application, and/or use of a pesticide to include notes, licenses, certificates, laboratory reports, marketing and sales records, ledgers, receipts, billing records, invoices, importation documents, purchase records, work orders, regulatory records, labels, chemical safety data documents, applications, contracts, training records, product labels, chemical formulations, and customer files.

        i. This includes seizure of any and all computers and storage medium contained within the Subject Premises, where such information may be located.*

        ii. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

        iii. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

        iv. If imaging of any computers and/or storage media on site proves impractical, or even impossible for technical reasons, then the agents will seize those components of Textile Field USA LLC's computer system that the agents believe must be seized to permit the agents to locate the things described in the warrant at an off-site location. The seized components will be removed from the Subject Premises and returned within two business days. If additional time is needed for imaging, agents may request additional time from the Court.

2. Samples of fabric, packaging, and any chemical used or suspected to be used as a pesticide.

---

* However, further searching of any cellular telephones seized requires further application for a search warrant.